# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. JAE MICHAEL BERNARD, Defendant. | No. 22-CR-03 CJW-MAR  **MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

This matter is before the Court on the government's objection (Doc. 68) to the Report and Recommendation ("R&R") of the Honorable Mark A. Roberts, United States Magistrate Judge, recommending that the Court grant defendant's motion to withdraw his guilty plea. (Doc. 67). Inextricably intertwined in defendant's motion to withdraw his guilty plea is his motion to dismiss the indictment, claiming that Title 18, United States Code, Section 922(g)(9) is unconstitutional. (Doc. 54). The government timely resisted that motion (Doc. 62) and consequently, both sides have fully briefed the merits of the motion to dismiss. In his R&R, Judge Roberts did not address the motion to dismiss; the Court did not refer that motion to Judge Roberts. The Court finds here that both motions are ripe for disposition.

For the following reasons, the Court **overrules** the government's objections and **adopts** Judge Roberts' R&R, thereby permitting defendant to withdraw his guilty plea. At the same time, the Court **denies** defendant's motion to dismiss the indictment.

1

## II. STANDARD OF REVIEW

The Court reviews Judge Roberts' R&R under the statutory standards found in Title 28, United States Code, Section 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*See also* FED. R. CIV. P. 72(b) (stating identical requirements). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, the district court must review the objected portions de novo. 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate [judge]'s report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review is non-deferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991); *see also Doe v. Chao*, 540 U.S. 614, 618–19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'"

*United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94–1609, at 3 (1976), *reprinted in* U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect Section 636(b))). Thus, although de novo review generally entails review of an entire matter, in the context of Section 636 a district courts required de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1).

Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger de novo review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity of . . . retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate [judge]." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has concluded that general objections require "full *de novo* review" if the record is concise. *Id.* Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this Court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Ass'n, Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996).

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996); *see also Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Federal Rule of Civil Procedure 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with

"clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed).

### III. BACKGROUND

On January 6, 2022, a grand jury charged defendant and another person in a three-count indictment. (Doc. 3). Defendant was named only in Count 1, which charged him with possession of a firearm after having been convicted of a misdemeanor crime of domestic violence, in violation of Title 18, United States Code, Sections 922(g)(9) and 924(a)(2). (*Id.*).

On June 9, 2022, defendant pled guilty without a plea agreement to the charge before Judge Roberts, who issued an R&R recommending the Court accept defendant's guilty plea. (Docs. 34, & 35).

On June 23, 2022, the United States Supreme Court held unconstitutional a State of New York's penal code provision making it a crime to possess a firearm outside the home without a license, when licensing required applicants to satisfy a "proper cause" for possessing a firearm by "demonstrat[ing] a special need for self-protection distinguishable from that of the general community." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2117 (2022). In *Bruen*, the Supreme Court determined that all lower courts had erred in applying means-end scrutiny of statutes regulating firearms, finding that statutes regulating conduct protected by the Second Amendment are presumptively unconstitutional unless the government can show that "it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129-30. "*Bruen* transformed and left uncharted much of the legal landscape" of Second Amendment jurisprudence. *United States v. Charles*, 22-CR-00154, 2022 WL 4913900, at *1 (W.D. Tex. Oct. 3, 2022).

On June 24, 2022, the Court adopted Judge Roberts' R&R and accepted defendant's guilty plea. (Doc. 42).

On August 11, 2022, the United States Probation Office filed its draft presentence investigation report ("PSR") (Doc. 45). The PSR determined defendant's base offense level was 20 with a four-level enhancement for the number of firearms and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 21. (*Id.*, at 9). The PSR placed defendant in Criminal History Category I (*Id.*, at 12), resulting in an advisory guidelines range of 37-46 months (*Id.*, at 19).

On August 25, 2022, defendant filed an unresisted motion for an extension of time to file objections to the draft PSR, arguing that he needed more time to review discovery. (Doc. 48). The Court granted defendant's motion, giving him until September 6, 2022, to file objections. (Doc. 49).

On September 6, 2022, defendant filed a second, unresisted motion for extension of time to file objections to the draft PSR, this time citing a death in defense counsel's family. (Doc. 51). The Court granted defendant's motion, giving defendant until September 20, 2022. (Doc. 52).

On September 19, 2022, defendant filed the instant motion to withdraw his guilty plea and to dismiss the indictment. (Doc. 54).

On September 20, 2022, defendant filed a third motion for an extension of time to file objections to the PSR, this time citing the need to review discovery and the prolonged absence of defense counsel from the office, asking for one additional day. (Doc. 57). The Court granted defendant's motion. (Doc. 58).

On September 21, 2022, defendant filed objections to the PSR. (Doc. 60). Among other things, defendant objected to the base offense level of 20, asserting that it should be 14, with an advisory guidelines range of imprisonment of 18-24 months. (*Id.*, at 2). The final PSR was filed on September 28, 2022. (Doc. 63).

## IV. ANALYSIS

### A. *Judge Roberts' R&R and the Government's Objections*

Judge Roberts found that the intervening change in the law—the Supreme Court's decision in *Bruen*—constituted just grounds for defendant to withdraw his guilty plea. (Doc. 67, at 7-8). Without deciding whether Section 922(g)(9) is unconstitutional, Judge Roberts found that it was at least a plausible argument such that defendant "should have the opportunity to have the merits of his constitutional argument considered." (*Id.*, at 8). Judge Roberts went on to review the other pertinent factors: 1) whether defendant asserts his innocence; 2) the length of time between the guilty plea and the motion to withdraw it; and 3) whether the government will be prejudiced. (*Id.*, at 8-11). Judge Roberts concluded that defendant is asserting his legal innocence because he is asserting the law is unconstitutional. (*Id.*, at 8-9). Focusing on the time between the *Bruen* decision and defendant's motion to withdraw his guilty plea, Judge Roberts found this factor weighs in favor of allowing defendant to withdraw his guilty plea because "a motion of this nature seems to call for some historical research to assure it is not being filed improvidently." (*Id.*, at 9-10). Last, Judge Roberts found the government will not be prejudiced by granting the motion because the government had not yet prepared for trial such that it will not have to repeat any work and has not claimed missing witnesses. (*Id.*, at 10-11). Therefore, Judge Roberts recommended the Court grant defendant's motion to withdraw his guilty plea. (*Id.*, at 11).

In its objections, the government asserts first that Judge Roberts erred in finding that defendant should be allowed to withdraw his guilty plea, asserting there is no fair and just reason to do so. (Doc. 68-1, at 4-17). The government asserts first that defendant can raise a constitutional challenge on appeal even though he did not raise it before this Court, and therefore there is no need for him to withdraw his guilty plea. (*Id.*, at 4-6). Second, the government argues that defendant's constitutional challenge is

6

without merit in any event. (*Id.*, at 6-17). The government also argues that there is no claim of legal innocence here because defendant admitted facts establishing the elements of the offense during his guilty plea. (*Id.*, at 17-18). The government further argues that the timing of defendant's motion militates against allowing him to withdraw his guilty plea. (*Id.*, at 18-19). Last, the government argues that Judge Roberts erred in finding the government was not prejudiced because, it repeats, defendant can challenge the constitutionality of the statute on appeal. (*Id.*, at 20).

### B. *Defendant's Motion to Withdraw His Guilty Plea*

The Court finds that all the factors weigh in favor of allowing defendant to withdraw his guilty plea. Although, as will be explained in the last section, the Court finds no merit to defendant's motion to dismiss, his argument of unconstitutionality is a plausible one, especially given the shifting foundations of constitutional law reflected in recent Supreme Court decisions. Under these circumstances, defendant has articulated a fair and just reason to withdraw his guilty plea because had the *Bruen* decision come down before he pled guilty, he would have challenged the constitutionality of Section 922(g)(9).

The Court is not persuaded by the government's argument that withdrawal is unnecessary because defendant can raise for the first time on appeal the unconstitutionality of the statute. (Doc. 68-1, at 4-6). The government asserts that the Eighth Circuit Court of Appeals "has said facial constitutional challenges, as opposed to applied challenges which are found to be non-jurisdictional, survive a guilty plea," citing *United States v. Seay*, 620 F.3d 919 (8th Cir. 2010). (*Id.*, at 5-6). The government also cites *United States v. Jacobson*, 406 F. App'x 91 (8th Cir. 2011) (unpublished), *United States v. Bramer*, 832 F.3d 908 (8th Cir. 2016), and *United States v. Nunez-Hernandez*, 43 F.4th 857 (8th Cir. 2022), in support of its assertion. (*Id.*, at 6). There are problems with the government's argument.

7

First, *Seay* and *Jacobson* are easily distinguishable. In *Seay*, the defendant filed a motion to dismiss the indictment as unconstitutional before he entered a guilty plea; the issue was whether his right to appeal the constitutionality of the statute survived a clause in a plea agreement waiving his right to appeal. 620 F.3d at 920-21. In *Jacobson*, the Eighth Circuit Court of Appeals found the defendant "forfeited the benefit of full review" of his claim the statute violated the second amendment because he did not raise the claim before the district court. 406 F. App'x at 92. Contrary to the government's reading of this opinion, the court did not consider the defendant's facial challenge and deny it on the merits. *Id.* Rather, the court noted that defendant was making as "an applied" challenge, which he waived by pleading guilty. *Id.*[1] Second, although *Bramer* and *Nunez-Hernandez* support the government's assertion that a defendant can raise a facial challenged to the constitutionality of a statute for the first time on appeal, he must do so under a plain error review and waives the ability to make an as-applied argument. Thus, although defendant here could still have some ability to appeal the constitutionality of the statute of conviction, it is not the full benefit of review he would have on appeal had he first raised the issue before this Court.

To the extent that the government argues that there is no fair reason to withdraw his guilty plea because he would lose on the merits, the Court again is not persuaded. Though the Court ultimately finds below that defendant loses on the merits of his argument, that is not the question. The question here is whether he can make a plausible challenge to the constitutionality of the statute of conviction. His argument is plausible, especially given the seemingly shifting grounds of constitutional interpretation, particularly as it applies to the Second Amendment.

---

[1] To be sure, there is dicta in *Jacobson* to the effect that "[i]f Jacobson made a facial attack on § 922(g)(3), it would be a jurisdictional claim that survives the guilty plea, but it would be foreclosed by our holding in *United States v. Seay*, 620 F.3d 919, 925 (8th Cir. 2010) (affirming § 922(g)(3) against a facial challenge)." 406 F. App'x at 92.

As to the remaining factors, the Court agrees with Judge Roberts that defendant's motion to dismiss is an assertion of legal innocence, even if it is not one of factual innocence. The time factor is a bit more nuanced. I agree with Judge Roberts that the appropriate time frame to focus on here is the delay between the Supreme Court's *Bruen* decision and defendant's motion to withdraw his guilty plea, a period of 88 days (almost three months). This is a long time, and the government is right to point out the timing in relation to the issuance of the PSR and defendant's objections to the PSR. The timing could suggest that defendant's motivation for moving to withdraw his guilty plea was triggered by buyer's remorse and second thoughts, especially given his objection to his base offense level and sentencing range. On the other hand, during this same time period defense counsel lost a loved one and twice sought extensions of deadlines because of that and the subsequent absence from his office. Together with the unusual legal challenge here, the Court finds on balance that the delay was not unwarranted and does not otherwise undercut the reason defendant articulated for moving to withdraw his guilty plea.[2]

Last, the Court finds Judge Roberts did not err in finding the government would not suffer prejudice by allowing defendant to withdraw his guilty plea. As the Court noted above, although defendant could retain the ability to make a facial challenge to the constitutionality of the statute of conviction without first raising it before this Court, it would be on plain error review and would not preserve for him the full benefit of appellate review he would retain if he first raised the issue before this Court. And, as Judge

---

[2] The government also argues that the *Bruen* decision was not unexpected and oral argument in that case occurred two months before the grand jury indicted defendant. (Doc. 68-1, at 19). The government has a point, to a degree, but the fact remains that the Supreme Court did not decide *Bruen* until after defendant pled guilty. Although the defendant could anticipate that the Supreme Court would say something about the Second Amendment, not even scholars or pundits could fully predict what the Supreme Court will say in any pending case.

9

Roberts noted, this is not a case where the government had already prepared for trial and would have to do so again, or where they are claiming that the delay will result in loss of evidence.

For these reasons, the Court finds that Judge Roberts did not err in finding defendant has raised a fair and just reason to withdraw his guilty plea and for recommending that the Court grant his motion. Thus, the Court **overrules** the government's objections (Doc. 68) to Judge Roberts' R&R (Doc. 67) as to defendant's motion to withdraw his guilty plea, and **grants** defendant's motion to withdraw his guilty plea (Doc. 54).

### C. *Defendant's Motion to Dismiss*

Defendant moves to dismiss Count 1 of the indictment, the only count naming him as a defendant, on the ground that the statute making it a crime for a misdemeanant domestic abuser to possess a firearm, Title 18, United States Code, Section 922(g)(9), violates the Second Amendment to the United States Constitution. (Doc. 54, at 1-3). The government argues otherwise. Federal Rule of Criminal Procedure Rule 12 provides, in pertinent part:

> Rule 12. Pleadings and Pretrial Motions
> * * *
> (b) Pretrial Motions.
> (1) In General. A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits.
>
> * * *
>
> (3) Motions That Must Be Made Before Trial. The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
> * * *
> (B) a defect in the indictment . . . .

FED. R. CRIM. P. 12. An indictment is defective, and thus subject to pretrial challenge under Rule 12(b)(3)(B), if it alleges a violation of a statute that is unconstitutional. *See, e.g.*, *United States v. Brown*, 715 F. Supp. 2d 688, 689–90 (E.D. Va. 2010). Here, defendant makes a facial challenge to the constitutionality of Section 922(g)(9). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

The Court finds that Section 922(g)(9) is not unconstitutional and denies defendant's motion to dismiss. In arriving at this conclusion, the Court first finds that Section 922(g)(9) implicates conduct protected by the Second Amendment. Second, the Court concludes that Section 922(g)(9) is consistent with the Nation's traditional regulation of possession of firearms by a criminal posing a danger to society.

### 1. Section 922(g)(9) Implicates the Second Amendment

The Second Amendment to the United States Constitution provides "[a] well regulated Militia, being necessary to the security of a free [s]tate, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. Title 18, United States Code, Section 922(g)(9), however, provides that "[i]t shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence, to . . . possess in or affecting commerce, any firearm or ammunition." The question here is whether Section 922(g)(9) unconstitutionally infringes upon defendant's right to keep and bear arms guaranteed to persons under the Second Amendment.

In *Bruen*, the United States Supreme Court explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129–30. Only after the government makes that showing "may a court conclude

11

that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* at 2130 (internal quotation marks omitted).

Because the State of New York only issued public-carry licenses when an applicant demonstrated a special need for self-defense, the *Bruen* Court found "the State's licensing regime violates the Constitution." *Id.* at 2122. The Supreme Court's holding in *Bruen* did not overturn *District of Columbia v. Heller*, in which the Court recognized the importance of "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" 554 U.S. 570, 627 (2008) (citations omitted). In fact, the *Bruen* Court expressly stated that its opinion was "consistent with *Heller* and *McDonald [v. City of Chicago*, 561 U.S. 742 (2010)]." 142 S. Ct at 2122. As in *Heller* and *McDonald*, the issue in *Bruen* concerned "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. The *Bruen* Court noted that it was undisputed that the petitioners were "two ordinary, law-abiding, adult citizens" who are "part of 'the people' whom the Second Amendment protects." *Id.* at 2119. In the first paragraph of the *Bruen* opinion, the Court framed the issue as follows:

> In *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010), we recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense. In this case, petitioners and respondents agree that ordinary, law-abiding citizens have a similar right to carry handguns publicly for self-defense. We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

*Id.* at 2122 (parallel citations omitted). In the concluding paragraph of the majority opinion, the Court repeated that the right to bear and keep arms belonged to "law-abiding citizens with ordinary self-defense needs." *Id.* at 2156.

12

Under *Bruen*, the threshold question a court must address is whether the statute in question regulates conduct protected by the Second Amendment. Here, Section 922(g)(9) criminalizes possession of a firearm, which is conduct expressly protected by the Second Amendment. The Court rejects the government's argument that the Second Amendment applies only to law-abiding citizens as a textual matter. (Doc. 68-1, at 9-11). The text of the Second Amendment does not qualify who may possess firearms, but rather uses the word "people." Thus, as a textual matter, the plain reading of the Second Amendment covers defendant who is a person under the Constitution. *See United States v. Perez-Gallan*, 22-CR-00427, 2022 WL 16858516, at *8-9 (W.D. Tex. Nov. 10, 2022) (finding the Second Amendment applies to members of the political community and is not limited to law-abiding citizens). Rather, the Court finds that whether a person is law abiding affects the ability of Congress to regulate that person's possession of firearms under the Second Amendment. Thus, the Court answers the threshold question in the affirmative.

### 2. Section 922(g)(9) is Consistent with the Nation's Tradition of Firearm Regulation

Having found that Section 922(g)(9) implicates conduct protected by the Second Amendment, the next question is whether it is consistent with the Nation's historical tradition of firearm regulation. The Court finds that it is because at the time of the adoption of the Second Amendment the Nation kept arms from citizens who posed a danger to society. Section 922(g)(9) keeps arms from those convicted of violent assaults upon domestic partners.

*Bruen* opens by expressly reaffirming the holdings of the Supreme Court's recent Second Amendment cases, which defined the right to bear arms as belonging to "law-abiding, responsible citizens." 142 S. Ct. at 2122, 2131. It is abundantly clear that the *Bruen* Court did not disturb the conclusions in *Heller* and *McDonald* in which the Justices made it plain that it left undisturbed government regulations prohibiting felons from

13

possessing firearms. *Id.* at 2162 (Kavanaugh, J., concurring). It follows that, since *Bruen*, lower courts have consistently held as constitutional Section 922(g)(1) which makes it an offense for felons to possess firearms. *See United States v. Price*, NO. 22-cr-00097, 2022 WL 6968457, at *8 (S.D.W. Va. Oct. 12, 2022) (collecting cases).

Prohibiting violent criminals from possessing firearms, such as those who have been convicted of a misdemeanor crime of domestic violence, is consistent with and analogous to prohibiting felons from possessing firearms. To be sure, federal law prohibiting domestic violence misdemeanants from possessing firearms is of relatively recent origin and historic treatment of domestic violence has evolved greatly since 1791. *See Perez-Gallan*, 2022 WL 16858516, at *5-6 (recounting American historical punishment of domestic violence). Thus, it is not surprising that legal scholars have found little historic evidence of legislation regulating firearm possession due to domestic violence. *See, e.g.*, Joseph Blocher, *Domestic Violence and the Home-Centric Second Amendment*, 27 DUKE J. GENDER L. & POL'Y 45, 55-56 (2020) ("In the context of domestic violence prohibitions, the historical record is problematic to say the least."); Carolyn B. Ramsey, *Firearms in the Family*, 78 OHIO STATE L.J. 1257, 1301 (2017) ("Historical support for the exclusion of domestic violence offenders from Second Amendment protection appears rather thin."); *see also United States v. Chester*, 628 F.3d 673, 681 (4th Cir. 2010) (noting that "[i]f the historical evidence on whether felons enjoyed the right to possess and carry arms is inconclusive, it would be even more so with respect to domestic violence misdemeanants.").

Nevertheless, the clear import from *Bruen* and its precedents is that regulations run afoul of the Second Amendment when they interfere with possession of firearms by law abiding citizens. In short, domestic violence misdemeanants are "relevantly similar to felons" such that they can be "denied weapons for the same reasons." Blocher, *supra*, at 56. Further, there is an emphasis in particular on prohibiting violent people from

possessing firearms. *See Kanter v. Barr*, 919 F.3d 437, 454, 456-58 (7th Cir. 2019) (Barrett, J., dissenting) ("The historical evidence does, however, support a different proposition: that the legislature may disarm those who have demonstrated a proclivity for violence or whose possession of guns otherwise threaten the public safety. This is a category simultaneously broader and narrower than 'felons'—it includes dangerous people who have not been convicted of felonies but not felons lacking indicia of dangerousness."). Thus, this Court joins every other court thus far in addressing Section 922(g)(9) in finding it constitutional. *See United States v. Anderson*, No. 21CR00013, 2022 WL 10208253, at *1 (W.D. Va. Oct. 17, 2022) (finding Section 922(g)(9) constitutional); *United States v. Nutter*, No. 21-cr-00142, 2022 WL 3718518, at *6-7 (S.D.W. Va. Aug. 29, 2022) (same); *United States v. Jackson*, No. CR-22-59, 2022 WL 3582504, at *3 (W.D. Okla. Aug. 19, 2022) (same).

## V. CONCLUSION

For the reasons stated above, the government's objections (Doc. 68) are **overruled** and the Court **adopts** Judge Roberts' R&R (Doc. 67); defendant's motion to withdraw his guilty plea (Doc. 54) is **granted**. The Court **denies** defendant's motion to dismiss the indictment. (Doc. 54). This matter will be reset for trial by separate Trial Management Order. The government is directed to provide the Court with the Speedy Trial calculation within three (3) days of the date of this order.

**IT IS SO ORDERED** this 5th day of December, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa